MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
MARY K. DIMKE
Assistant United States Attorney
KARLA G. PERRIN
Special Assistant United States Attorney
402 E. Yakima Avenue, Suite 210
Yakima, Washington  98901
(509)  454-4425
ADAM C. CULLMAN
Trial Attorney
Environmental Crimes Section
U.S. Department of Justice

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 2 4 2015

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          vs.

SCOTT CARL JOHNSON,

                    Defendant.

Case No. 4:15-CR-6042-SMJ

PLEA AGREEMENT

~~Filed Under Seal~~

        Plaintiff United States of America, by and through Michael C. Ormsby, United

States Attorney for the Eastern District of Washington, Mary K. Dimke, Assistant

United States Attorney, Karla G. Perrin, Special Assistant United States Attorney, for

the Eastern District of Washington, Adam C. Cullman, Trial Attorney, Environmental

Crimes Section, U.S. Department of Justice, and Defendant, SCOTT C. JOHNSON,

and the Defendant's counsel, Kevin J. Curtis, agree to the following Plea Agreement:

1.    Waiver of Indictment:

        Defendant, having been advised of the right to be charged by Indictment, agrees

to waive that right and enter pleas of guilty to the charges brought by the United States

in an Information.

Plea Agreement - 1

2.    <u>Guilty Pleas and Maximum Statutory Penalties</u>:

The Defendant agrees to plead guilty to Count 1 of the Information, charging Defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, and to Count 2 of the Information, charging Defendant with Conspiracy to Defraud the Government by Obtaining False, Fictitious, and Fraudulent Claims for Income Tax Refunds, in violation of 18 U.S.C. § 286.

The Defendant understands that the maximum statutory penalty for Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, is a term of imprisonment not to exceed twenty (20) years; a fine not to exceed $250,000; or both; a three (3)-year term of supervised release; and a $100 special penalty assessment.

The Defendant understands that the maximum statutory penalty for Conspiracy to Defraud the Government by Obtaining False, Fictitious, and Fraudulent Claims for Income Tax Refunds, in violation of 18 U.S.C. § 286, is a term of imprisonment not to exceed ten (10) years; a fine not to exceed $250,000; or both, a three (3)-year term of supervised release; and a $100 special assessment.

The Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

3.    <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement.  Sentencing is a matter that is solely within the discretion of the Court.  The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S.

Plea Agreement - 2

Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

4.   <u>Waiver of Constitutional Rights</u>:

The Defendant understands that by entering these pleas of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

     a.   The right to a jury trial;

     b.   The right to see, hear and question the witnesses;

     c.   The right to remain silent at trial;

     d.   The right to testify at trial; and

     e.   The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

Plea Agreement - 3

5.    Elements of the Offense:

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, the United States must prove each of the following elements beyond a reasonable doubt:

First:        There was an agreement between two or more persons to commit wire fraud as charged in the Information; and

Second:   The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

The United States and the Defendant agree that in order to convict the Defendant of Conspiracy to Defraud the Government by Obtaining False, Fictitious, and Fraudulent Claims for Income Tax Refunds, in violation of 18 U.S.C. § 286, the United States must prove each of the following elements beyond a reasonable doubt:

First:        Defendant knowingly entered into an agreement with others to defraud the United States or a department or agency of the United States, as charged in the Information;

Second:   By obtaining payment or allowance of materially false, fictitious, or fraudulent claims, as charged in the Information.

6.    Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and that these facts constitute an adequate factual basis for the Defendant's guilty pleas:

Gen-X Energy Group (Gen-X), a renewable energy company, was headquartered in Pasco Washington and operated a renewable fuel production facility in Moses Lake, Washington.  Gen-X also maintained a renewable fuel facility through its subsidiary, Southern Resources and Commodities (SRC), which was located in

Plea Agreement - 4

Georgia. Defendant was the President of Gen-X and was also a corporate officer for SRC.

Defendant admits that from approximately October of 2012 to approximately April of 2015, Defendant agreed with others to participate in a scheme to falsely claim the production of renewable fuel at the GEN-X facilities for which renewable identification numbers (RINs) were fraudulently generated through the on-line "EMTS" system. Throughout this period, much of the fuel claimed to be produced at the facilities was either not produced or it was re-processed through the facilities multiple times. Thus, the resulting RINs generated on this fuel were fraudulent and were subsequently sold fraudulently in an effort to obtain proceeds to which GEN-X and the conspirators were not entitled. Defendant and his conspirators also agreed to cause Gen-X to file false tax refund claims with the IRS, specifically "Claims for Refunds of Excise Taxes", for fuel that was either not produced or had been re-processed multiple times.

Defendant admits that the conspirators used a circular scheme whereby "feedstock" was reprocessed multiple times and RINs were fraudulently generated each time the "feedstock" was reprocessed. To carry out the scheme, GEN-X procured "feedstock" for renewable fuel from other conspirators who bought GEN-X's renewable fuel "product" and sold that "product" back to GEN-X as a "feedstock." Thus, rather than generating new renewable fuel with each batch of feedstock, the same product was simply being re-circulated through the GEN-X facilities. Prior to selling the "fuel" to customers, GEN-X caused a RIN to be electronically generated through EMTS for each gallon of renewable fuel and then separated the RINs from the renewable fuel. The RINs and the RIN-stripped renewable fuel were then each sold separately to different GEN-X customers. Defendant and the other conspirators participated in this scheme knowing that the

purpose was to defraud those purchasing RINs from GEN-X, as well as the U.S. government.

As part of the scheme, the conspirators established various shell companies in order to create the appearance of false purchases of feedstock by Gen-X and SRC, to create the appearance of sales of renewable fuel to third parties, when such sales never took place, and to conceal the transfer of the proceeds of the fraudulent scheme between and among the conspirators.

As part of the scheme, the conspirators created false records, such as false invoices from Gen-X or SRC to other entities purporting to show the sale of renewable fuel; false invoices to Gen-X and SRC purporting to show the purchase of feedstock needed for the production of advanced biofuel, and false bills of lading purporting to show the transportation of renewable fuel and feedstock by tanker truck.

In furtherance of the fraudulent scheme, the conspirators used and caused others to use interstate wire communications. For example, the conspirators caused Gen-X to make interstate electronic submissions to the EMTS system to generate the fraudulent RINs. The conspirators caused Gen-X to pay for fraudulent feedstock purchases via wire transfers from their bank located in the Eastern District of Washington to the shell companies' bank accounts, some of which were out of state.

As a result of the scheme to defraud, from approximately October of 2012 to April of 2015, the conspirators fraudulently generated at least 72 million RINs that were based on renewable fuel that was either never produced or was re-processed at the GEN-X facilities.

These RINs were then sold to a third-party broker, who wired money to Gen-X and SRC to purchase the fraudulent RINs. Gen-X received payments via wire transfer from an out of state bank to Gen-X's bank account, which

bank was located in the Eastern District of Washington. From approximately October of 2012 to April of 2015, GEN-X received at least $57 million for the sale of fraudulent RINs. Defendant admits that the vast majority of his salary, bonuses, and compensation were derived from the proceeds of the fraud and money laundering scheme.

From approximately October of 2012 to April of 2015, Defendant and his conspirators agreed to and did cause Gen-X to file Claims for Refunds of Excise Taxes (using IRS Form 8849) with associated Schedule 3 Forms with the U.S. Department of the Treasury, IRS, when they knew that the claims were false. The Schedule 3 Forms claimed that Gen-X manufactured "Liquid fuel derived from biomass," when Defendant and his conspirators knew that Gen-X did not produce such fuel and the purchasers of the "fuel" were shell companies set up to perpetuate the fraud claims, not legitimate purchasers of renewable fuel.

As part of the scheme, Defendant and his conspirators caused Gen-X to apply to the IRS for the Alternative Fuel Tax Credit for 19,034,825 gallons of renewable fuel that was never actually produced and thus never actually sold. As a result of the false claims, the IRS paid Gen-X approximately $9,517,412.50, to which Gen-X had no valid claim.

This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

7.   Cooperation:

The Defendant agrees to cooperate completely and truthfully with the United States as follows:

Plea Agreement - 7

a.  <u>Debriefings</u>:

The Defendant agrees to participate in full debriefings by federal and local investigative agencies about all the Defendant's knowledge of illegal conduct, at times and places to be decided by these agencies.  The Defendant agrees to provide complete, accurate and truthful information to these agencies.  The Defendant agrees to not falsely implicate any person or entity and agrees to not protect any person or entity through false information or omission.

It is understood that the Defendant may have an attorney present at any or all such debriefings.

b.  <u>Testimony</u>:

The Defendant agrees to testify completely and truthfully at any subsequent hearing, grand jury proceeding, or other federal or state court proceeding involving co-defendants or any other person involved in criminal activity.

Both the Defendant and the United States agree to request a reasonable continuance of the sentencing date in order to ensure that the Defendant testifies pursuant to this provision prior to sentencing.

c.  <u>Documents</u>:

The Defendant agrees to voluntarily produce all documents, records, or other tangible evidence relating to matters about which the United States Attorney's Office, the Environmental Crimes Section of the U.S. Department of Justice, or law enforcement agencies inquire.

d.  <u>Recovery of Assets</u>:

The Defendant agrees to fully cooperate in the identification and recovery of assets to pay restitution and further agrees that if any proceeds are in the Defendant's possession or control, the Defendant will immediately relinquish them to the United States.

Plea Agreement - 8

e.  Income Tax Information:

The Defendant agrees to participate in preparing a statement with the IRS, United States Attorney's Office, or any other law enforcement agency setting forth the Defendant's income from his participation in the charged fraud scheme.  The Defendant further agrees to report said income on the Defendant's tax return or an amended tax return.

f.  Notification:

The Defendant agrees to immediately notify the United States Attorney's Office if the Defendant is contacted, interviewed, subpoenaed or requested to testify for or against any other person.

g.  Effect of Breach:

The Defendant agrees that if the Defendant breaches this Plea Agreement, the agreement is null and void and the Defendant expressly waives the right to challenge the initiation of additional charges against the Defendant for any criminal activity and agrees that the United States may make derivative use of and may pursue any investigative leads suggested by the Defendant's statements and cooperation.

This agreement does not protect the Defendant from prosecution for perjury, obstruction of justice, or any other offense should the Defendant commit any crime during the Defendant's cooperation under this agreement.

h.  Waiver of Inadmissibility of Statements:

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement.  The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions in this case

Plea Agreement - 9

would be admissible against the Defendant in the United States's case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

8.   Substantial Assistance:

The United States also agrees to furnish the Defendant an opportunity to provide "substantial assistance," that is, information and assistance in the investigation and prosecution of others.  The Defendant agrees to meet with federal and state law enforcement agents in an attempt to assist them in obtaining information that would form the basis of a motion for correction or reduction of sentence to be filed pursuant to U.S.S.G. §5K1.1 and 18 U.S.C. § 3553(e).  The United States agrees that if the United States determines that the Defendant has provided substantial assistance, the United States will move pursuant to U.S.S.G. §5K1.1 and 18 U.S.C. § 3553(e) for a reduction of sentence.  However, the Defendant understands that whether any such information amounts to substantial assistance is a determination left to the United States Attorney's Office and the Environmental Crimes Section of the U.S. Department of Justice.

a.   The Defendant must provide information and assistance in the federal or state investigation and prosecution of others who have the same as or greater involvement than the Defendant's involvement in violations of the law.

b.   The Defendant understands and agrees to participate in full debriefings by federal and local investigative agencies about the Defendant's knowledge of illegal conduct, at times and places to be decided by these agencies.  The Defendant agrees to provide complete, accurate, and truthful information during the debriefings.  Such debriefings may involve the use of a polygraph, if requested by the agencies.  It is understood that the Defendant may have an attorney present at the debriefings.  The Defendant also agrees to participate in any future court proceeding involving any named or unnamed coconspirators and any other persons involved in criminal activity,

Plea Agreement - 10

by testifying completely and truthfully. Such court proceedings include grand jury proceedings, trials, and sentencing hearings.

     c.    The Defendant agrees that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if the Defendant fails to provide truthful, complete and honest information during debriefings, testimony before the grand jury, or any court proceedings, or if the Defendant fails a polygraph examination. The determination whether the Defendant has failed a polygraph examination shall be made by the Court.

     d.    The Defendant understands this agreement does not protect him from prosecution for perjury, obstruction of justice, or any other offense should the Defendant commit any crime during the Defendant's cooperation under this agreement.

     e.    The Defendant understands further that if the United States determines that the Defendant has provided "substantial assistance" and a motion is made, the Court will be free to impose any sentence, even one below the applicable Guidelines sentencing range and below any statutory minimum. If a "substantial assistance" motion is filed, both the United States and the Defendant will be free to make a specific recommendation with respect to any correction or reduction of sentence. It is understood that the United States will inform the sentencing judge about the timing and extent of the Defendant's cooperation.

     f.    The Defendant understands that, if the United States files a motion indicating the Defendant has provided "substantial assistance," the appropriate reduction shall be determined by the Court for reasons including consideration of the following: (1) the Court's evaluation of the significance and usefulness of the Defendant's assistance, taking into consideration the United States' evaluation of the assistance rendered; (2) the truthfulness, completeness, and reliability of any

Plea Agreement - 11

information or testimony provided by the Defendant; (3) the nature and extent of the Defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the Defendant or the Defendant's family resulting from the Defendant's assistance; and (5) the timeliness of the Defendant's assistance. See U.S.S.G. §5K1.1(a)(1)-(5).

The Defendant acknowledges that he has not completed providing substantial assistance at the time of the entry into this Plea Agreement and that the United States is not bound to move for a downward departure unless the Defendant provides information that is fully truthful and complete and that the Defendant testifies truthfully and completely at any hearing, trial, grand jury proceeding, or other court proceeding if called as a witness by any party.  The Defendant understands that it may be necessary to continue his sentencing date in order to verify full compliance with this agreement.

The Defendant acknowledges that if he fails to complete his efforts to provide substantial assistance by refusing reasonable requests to meet with law enforcement agents, by providing false information or withholding information from agents, or by failing to testify completely, truthfully, and honestly, the United States is under no obligation to file a motion for a downward departure pursuant to 18 U.S.C. § 3553(e) or U.S.S.G. §5K1.1, and this agreement shall be considered breached and null and void.  The United States may then prosecute the Defendant on all available charges, including making false statements and perjury.

9.    The United States Agrees:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Information, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

Plea Agreement - 12

The Defendant acknowledges and agrees, however, that for the purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all relevant conduct committed by Defendant.

10.    Restitution:

The United States and the Defendant hereby stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution in the amounts of:

    a.    $9,517,412.50 to the U.S. Department of Treasury; and

    b.    no less than $57 million to the third-party broker or any subsequent purchaser of the fraudulent RINS who retired them. The final amount and recipient will be determined by the Court at the time of sentencing.

The parties agree that the restitution order should be imposed jointly and severally with Defendant's conspirators. Said amount shall be due and payable immediately.

11.    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are advisory to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

The parties stipulate and agree that the following guideline provisions are applicable:

    a.    Offense Level:

        i.    The applicable guidelines section for the offense in this case is U.S.S.G. § 2B1.1. Defendant's base offense level is 7, pursuant to U.S.S.G. § 2B1.1(a)(1).

Plea Agreement - 13

ii.     A 24-level enhancement is appropriate because the loss associated with the crime is more than $65,000,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(M).

iii.    A 2-level enhancement is appropriate because the scheme involved sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(C).

The parties are free to advocate for any other enhancements or departures under the guidelines.

b.     <u>Acceptance of Responsibility</u>:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement by November 20, 2015, and enters a plea of guilty at the next hearing, the United States will move for a two (2) or three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), as appropriate based on the Court's determination of the offense level.

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a two (2) or three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

c.     <u>Criminal History</u>:

The United States and the Defendant understand that the Defendant's criminal history computation ultimately will be determined by the Court after review of the Presentence Investigative Report. The United States and Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Pre-Sentence Investigation Report is completed.

Plea Agreement - 14

12.    Incarceration:

The parties are free to recommend any legal sentence.

13.    Criminal Fine:

In light of the agreed restitution obligation in this matter, the United States agrees that it will not recommend a fine.

14.    Supervised Release:

The United States and the Defendant agree to recommend that the Court impose a three (3)-year term of supervised release to include (but not limited to) the following special conditions, in addition to the standard conditions of supervised release:

a.    that the Defendant provide financial information, provide copies of Federal income tax returns and allow credit checks, at the direction of the Probation Officer;

b.    that the Defendant shall disclose all assets and liabilities to the Probation Officer and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the Probation Officer;

c.    that the Defendant be prohibited from incurring any new debt, opening new lines of credit, or entering into any financial contracts or obligations without the prior approval of the Probation Officer; and

d.    that the Defendant participate and complete financial counseling and life skills programs at the direction of the Probation Officer.

15.    Forfeiture:

The Defendant stipulates and agrees to forfeit all right, title, and interest, to the United States, in all property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud offenses in violation of Title 18, United States Code, Sections 1343, 1349, including, but not limited to, the following listed assets:

Plea Agreement - 15

a. 2013 Malibu Wakesetter, HIN: US-MB2L7065K213, Reg No: WN4449SA, registered to Scott Johnson;

b. 2013 Boatmate Triple Axel Trailer, VIN: 5A7BB2433DT002077, License Plate Number: 9456YB, registered to Scott Johnson;

c. 2012 Ford F-350 (VIN:1FT8W3BTXCEC95089);

d. 2013 Ford F-150 (VIN: 1FTFW1ET9DFC66167);

e. 2014 GMC Yukon XL (VIN:1GKS2MEF6ER112221);

f. Breitling Bentley GMT Midnight (COSC:2675717);

g. Edward Jones Joinit-1 Account, #978-14540-1-3, held by Scott Johnson and Kathy Johnson; and

h. Real Property:  Franklin County, State of Washington, Tax Parcel Number: 124-052-060, Parcel A and B, as more fully described in the Information.

The Defendant stipulates and agrees to the entry of a money judgment as listed below pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c):

MONEY JUDGMENT

A sum of money equal to $1,000,000 in United States currency, representing the total amount of gross proceeds obtained as a result of the wire fraud offense(s).

SUBSTITUTE ASSETS

The Defendant understands that it is the intent of the United States pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the Defendant up to the value of the money judgment agreed to herein.

The Defendant agrees to fully cooperate with the United States and take all steps as requested by the United States to pass clear title to forfeitable assets to the United States.

The Defendant agrees to provide the United States with all information about the location of assets which are proceeds of illegal conduct as outlined in the relevant conduct section of this plea agreement, and further agrees he will voluntarily turn such assets over to the United States and stipulate to their forfeiture. Defendant further agrees to voluntarily relinquish all right, title and interest in such assets or proceeds in favor of the United States and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture.

The Defendant also agrees to hold the United States, and any and all agencies, and their agents and employees harmless from any and all claims whatsoever in connection with the investigation, the prosecution of charges, and the seizure and forfeiture of property covered by this Plea Agreement.

The Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that all the property covered by this agreement is subject to forfeiture as proceeds of illegal conduct. The Defendant waives further notice of any federal, state, or local proceedings involving the forfeiture of assets the Defendant is agreeing to forfeit in this Plea Agreement.

Non-Abatement of Criminal Forfeiture

Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular

Plea Agreement - 17

property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

16.   Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $200 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

17.   Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

18.   Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

19.   Hyde Amendment Waiver:

The Defendant waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

Plea Agreement - 18

20.   <u>Appeal Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction and the sentence the Court imposes, including the restitution order. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence. If the Defendant files a notice of appeal, a habeas petition, or other collateral attack, notwithstanding this Agreement, the Defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether Defendant is in breach of this agreement; and, if so, to permit the government to withdraw from the Plea Agreement.

21.   <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and the Environmental Crimes Section of the U.S. Department of Justice, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

This plea agreement incorporates the attached Addendum from the United States Attorney's Office for the Middle District of Florida.

Plea Agreement - 19

Approvals and Signatures

      Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington and the Environmental Crimes Section of the U.S. Department of Justice.

Michael C. Ormsby
United States Attorney

_____      11/24/2015
MARY K. DIMKE                      Date
Assistant United States Attorney

_____      11/24/15
KARLA G. PERRIN                   Date
Assistant United States Attorney

_____      11/24/2015
ADAM C. CULLMAN                 Date
Trial Attorney
Environmental Crimes Section
Environmental & Natural Resources Division
U.S. Department of Justice

Plea Agreement - 20

1         I have read this Plea Agreement and have carefully reviewed and discussed

2    every part of the agreement with my attorney.  I understand and voluntarily enter into

3    this Plea Agreement.  Furthermore, I have consulted with my attorney about my

4    rights, I understand those rights, and I am satisfied with the representation of my

5    attorney in this case.  No other promises or inducements have been made to me, other

6    than those contained in this Plea Agreement, and no one has threatened or forced me

7    in any way to enter into this Plea Agreement.  I am agreeing to plead guilty because I

8    am guilty.

9

10

11   _____    __11-24-2015_____

     SCOTT C. JOHNSON                         Date

12   Defendant

13        I have read the Plea Agreement and have discussed the contents of the

14   agreement with my client.  The Plea Agreement accurately and completely sets forth

15   the entirety of the agreement between the parties.  I concur in my client's decision to

16   plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court

17   should not accept the Defendant's plea of guilty.

18

19

20   _____    __11-24-15_____

     KEVIN J. CURTIS                          Date

21   Attorney for the Defendant

22

23

24

25

26

27

28   Plea Agreement - 21

2110 First Street, Suite 3-137
Fort Myers, Florida 33901
239/461-2200
239/461-2219 (Fax)



300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
904/301-6300
904/301-6310 (Fax)

35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
352/547-3600
352/547-3623 (Fax)

**U.S. Department of Justice**
*United States Attorney*
*Middle District of Florida*

400 West Washington Street, Suite 3100
Orlando, Florida 32801
407/648-7500
407/648-7643 (Fax)

—————

Main Office
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
813/274-6000
813/274-6358 (Fax)

———————————————————————————————————————————————————————

Reply to: **Tampa, FL**                                                                                    **SCS**

November 12, 2015

Re:    Addendum to the Plea Agreement for Scott Carl Johnson

If the Court accepts the plea agreement to which this addendum is attached, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant Scott Carl Johnson with committing any federal criminal offenses known to the United States Attorney's Office for the Middle District of Florida at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement. It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Respectfully Submitted,

A. LEE BENTLEY, III
United States Attorney

By:    Sara C. Sweeney
       Assistant United States Attorney

By:    Robert A. Mosakowski
       Chief, Economic Crimes Section
       Assistant United States Attorney